**THEODORE F.L. HOUSEL**
Atlantic County Prosecutor
4997 Unami Blvd.
Mays Landing, New Jersey 08330
609 909-7800

MCU 12-011

SUPERIOR COURT OF NEW JERSEY

LAW DIVISION - CRIMINAL

ATLANTIC COUNTY

# AFFIDAVIT

STATE OF NEW JERSEY    )

COUNTY OF ATLANTIC    )

SS: Investigation into the circumstances surrounding the homicide of **John Kingsbury**, which occurred on 2/5/12.

I, Michael Mattioli, of full age, and having been duly sworn according to law depose and say:

I am a Detective Sergeant with the Atlantic County Prosecutor's Office.  Currently, I am assigned to the Major Crimes Unit. In that capacity I am charged with the duties and responsibilities of investigating homicides that occur in Atlantic County New Jersey.

I make this application regarding the homicide investigation of **John Kingsbury**.  I am familiar with the circumstances surrounding the investigation.

I make this Affidavit in the performance of my duties as a law enforcement officer in the State of New Jersey, for a NO KNOCK( NO KNOCK only for 5 Oak Forest Drive, Sicklerville, NJ & 466 S. White Horse Pike, Winslow Township, Camden County, NJ) warrant to search :

THEODORE F.L. HOUSEL
Atlantic County Prosecutor
4997 Unami Blvd.
Mays Landing, New Jersey 08330
609 909-7800                                                                    MCU 12-011

1. **5 OAK FOREST DRIVE, located within the city Sicklerville, within the County of Camden, New Jersey;** to include any out buildings, sheds and/or garages. Dwelling is described as: a two story frame dwelling; located on the right side of a duplex as viewed from Oak Forest Drive. Said dwelling is situated on the north side of Oak Forest Drive. The residence has light blue siding with burgundy shutters, front door and attached garage door. Said garage being a single car and front entrance, located on the right side of the dwelling viewed from Oak Forest Drive. The aforementioned burgundy front door has a full view glass storm door in front of it. The number 5 is affixed to a porch pillar to the left of the front door as viewed from Oak Forest Drive.

2. **The Camden County Superior Court House, 101 S. 5th Street.** More specifically, a Gym style Locker located in the Female Officer's locker room within the Court House. Said locker assigned to Officer Lauren Kohl of the Camden County Sheriff's Department.

3. **2001 Jeep Wrangler, Red in color, bearing NJ registration SDX10Y. Also having a vehicle identification number (VIN) of 1J4FA49S41P305233 .** Said vehicle is registered to Lauren Kohl of 5 oak Forest Drive, Sicklerville, NJ.

4. **466 S. White Horse Pike,Winslow Township, Camden County, NJ.** to include any out buildings, sheds and/or garages. Dwelling is described as: a two & ½ story frame dwelling; located on the Northbound side of the White Horse Pike. The residence is green in color with white trim. The residence is situate at the foot of the Ancora overpass, just prior to said overpass, Northbound. The residence is seculded by itself, with the closest residence being some distance away.

5. **2010 KIA Forte , 2 Door, BLUE in Color bearing NJ Registration WHF75T and having a vehicle identification number (VIN) of KNAFW6A37A5294244.** Vehicle registered to Michael K. Castro at 109 Bellevue Avenue Hammonton, NJ 08037.

Items sought are evidence of the murder of John Kingsbury more specifically for, but not be limited to: a **Ruger LCP .380 (serial #37201647)** including the manufactures case and test fired spent shell casing provided when the weapon was purchased and any .380 ammunition. Evidence to include blood, hair, fibers or other bodily fluids and tissue. Clothing worn during the commission of the crime any other items of potential evidence related to the Homicide of John Kingsbury occurring on February 5, 2012. Also, cellular handset having the International Mobile Equipment Identity (IMEI) Number 011981002963963, which is assigned **AT&T** telephone

2

THEODORE F.L. HOUSEL
Atlantic County Prosecutor
4997 Unami Blvd.
Mays Landing, New Jersey 08330
609 909-7800                                                    MCU 12-011

---

facility number 856-297-2746. Said **AT&T** telephone facility number is in the name of Lauren
Kohl of 5 Oak Forest Drive, Sicklerville, NJ and cellular handset having the International Mobile
Equipment Identity (IMEI) Number 012421000766000, which is assigned **AT&T** telephone
facility number (609) 742-5700. Said **AT&T** telephone facility number is in the account name of
Michael Castro.

All of which constitutes evidence, fruits and/or instrumentalities of crimes committed in
State of New Jersey, including Murder N.J.S. 2C:11-3, and all potential associated charges
surrounding this investigation.

The facts tending to establish the reasonable grounds for this application and the probable cause
of belief, including this affiant's qualifications and experience are as follows:

1. In May of 1995, I graduated from Rowan University in Glassboro, New Jersey with a
   Bachelor of Science Degree in Criminal Justice.

2. Prior to my present employment, this Affiant was a full time sworn Police Officer with
   the Delaware River and Bay Authority Police Department. My duties were to enforce the
   Laws of both Delaware and New Jersey. This included, but was not limited to, all
   Criminal Investigation and related offences occurring in New Jersey and Delaware.

3. In June of 1997, this Affiant completed the Delaware River and Bay Authority Police
   Training Academy. Said academy is certified by the Delaware Commission on Police
   Training and accepted by the New Jersey Police Training Commission.

4. In August of 1999, this Affiant was hired by the Atlantic County Prosecutor's Office and
   completed the Modified Basic Course for Detectives given by the New Jersey
   Department of Law and Public Safety, Division of Criminal Justice.

5. While employed with the Atlantic County Prosecutor's Office this Affiant was first
   assigned to the Litigation Section, where this Affiant worked for 18 months. This Affiant
   was then assigned to the Juvenile Section where this Affiant worked for 8 months. This
   Affiant was then assigned to the Violent Crime Section where this Affiant worked for 19
   months. Finally, in **January 2003 this Affiant was assigned to Major Crimes
   Homicide Unit,** where this Affiant is currently assigned.

6. This Affiant has also received numerous hours of in-service training concerning legal
   updates, report writing, search warrant preparation and execution, search and seizure, and

3

**THEODORE F.L. HOUSEL**
Atlantic County Prosecutor
4997 Unami Blvd.
Mays Landing, New Jersey 08330
609 909-7800                                                           MCU 12-011

other techniques used in criminal investigations.

7. I have been the Affiant of countless Search Warrants, Communication Data Warrants and DNR Trap Trace Warrants.

8. In February of 2011, I was promoted to the rank of Sergeant in the Atlantic County Prosecutor's Office, Major Crime, Homicide Unit.

In addition to my qualifications referred to above, I have participated in the investigation and arrest of numerous persons for violation of the laws enumerated in the Criminal Statutes for the State of New Jersey.

The facts tending to establish the grounds for this application and probable cause that such grounds exist are as follows:

a.  On February 5, 2012, at approximately 3:00 p.m. Glenn Kingsbury arrived at his home located at 2140 Woodland Avenue, Mullica Township. Upon entering the house he found his father, John Kingsbury, in the foyer area of the residence, lying face up on the floor with a large pool of blood emanating from his head. Glenn called 911 at 3:09pm. Mullica Township Police and EMS arrive on scene. John was transported to Mainland Hospital via ambulance where he was treated. John Kingsbury was pronounced dead at 5:00pm. Incident to cleaning up the area where the victim was located, Glenn discovered two .380 caliber spent shell casings on the floor in the area where the victim was located. Glenn immediately called Mullica Township Police who responded back to the residence. Mullica Township Police contacted the Atlantic County Prosecutor's Office, Major Crime Squad who responded to the scene and began a Homicide Investigation.

b.  On February 6, 2012, the Atlantic County Medical Examiner preformed an autopsy on John Kingsbury. The cause of death was determined to be 2 gunshot wounds to the victim's head. The manner of death was ruled **Homicide**.

c.  On the evening February 5, 2012, Glenn Kingsbury, son of the victim and owner of 2140 Woodland Avenue, Mullica Township and his girlfriend Karen Drew were interviewed by ACPO, Major Crime Detectives. Glenn and Karen both accounted for there whereabouts when John Kingsbury was shot, which were tentatively verified pending further investigation.

THEODORE F.L. HOUSEL
Atlantic County Prosecutor
4997 Unami Blvd.
Mays Landing, New Jersey 08330
609 909-7800                                                                MCU 12-011

¶ 1   Glenn Kingsbury explained that his father, John has been living with him since the
end of October 2011. He had no indication of anyone who would want to hurt his
father. Glenn said that he is the owner of Cheer Tech Event Coordinators. Cheer Tech
is a business that he and his girlfriend Karen run. They organize cheerleading
competitions across the country. He said that the events generate a large amount of
cash that is often kept at his house until it can be deposited. He has dozens of
employees & business associates (including Michael Castro) that are aware of the
volume of cash his business generates. Furthermore, many times, there are several
competitions on the same day at different venues. He said his girlfriend Karen just got
back on the previous night (Feb.4, 2012) from a 2-day cheer event in Alabama. Also,
he ran an event on the previous day in Philadelphia, PA., where Michael Castro
assisted him.

¶ 2   Glenn also owns and operates a business in Hammonton, where he and Karen teach
Gymnastics and Tumbling. He rents the facility and splits the rent with a Martial Arts
Instructor named Michael Castro who also works Cheer Tech events for Glenn
occasionally. He has known Castro for less than a year. Michael Castro is identified
as:

**Michael K. Castro**

DOB 02-14-1981 Age-31
SS# 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
466 S. White Horse Pike
Winslow Township, NJ

¶ 3   Karen Drew explained that she and Glenn have been together for approximately 7
years. She explained Glenn's businesses and confirmed the information regarding the
large sums of cash at his house.

¶ 4   During Karen's interview, she was suspicious of Michael Castro for the following
reasons. She said that Castro owes Glenn several months of past due rent from the
Hammonton facility, where multiple checks have "bounced" totaling approximately
$8,000. Also, when they moved in to the Hammonton facility, Glenn bought Castro
workout mats and various equipment totaling $12,000.

¶ 5   Karen's biggest suspicion regarding Castro centered around various communications
Castro had with her and Glenn's 13-year-old son Austin, who Castro trains in Martial
Arts. Karen explained that Glenn had made plans to take his two children "Paint-

THEODORE F.L. HOUSEL
Atlantic County Prosecutor
4997 Unami Blvd.
Mays Landing, New Jersey 08330
609 909-7800                                                      MCU 12-011

---

balling" on Sunday (Feb.5, 2012) at a facility on Rt. 73, in Winslow Twp. Several of
Glenn's friends and their children were also going. Michael Castro had been invited
to go and suggested that he would be going. Karen saw Facebook communications
between Castro and Glenn's son Austin regarding the plans to go Paint-balling. Karen
paraphrased what she recalled regarding the exchange between Austin and Castro and
they are as follows:

| | |
|---|---|
| Austin to Castro: | Are you still going Paint-balling with us on Sunday ? |
| Castro: | Not sure if I'm going to make it. Who's all going. |
| Austin: | Me and my sister, my Dad, the Reikers and their kids etc… |
| Castro: | Karen's not going ? |
| Austin: | No |

Karen explained that she had errands to do on Sunday because she just got back on
the previous night (Feb.4, 2012) from a 2 day Cheer Tech event in Alabama. She
said, Glenn also ran a Cheer Tech event, where Michael Castro assisted, the previous
day in Philadelphia, Pa. Subsequently, she had paperwork and a substantial bank
deposit from both events to take care of. Glenn picked her up from the Philadelphia
airport Saturday night after flying in from Alabama and she stayed at Glenn's house
in Mullica. She woke up Sunday morning as Glenn and the kids were leaving to go
Paint-balling, just after 9am. She did a few things around the house, chatted with John
Kingsbury briefly, and prepared to start her errands. They included, traveling to her
house in Somerdale, NJ and making the business deposits at TD Bank. Also, Glenn
had invited two couples over to his house that evening to watch the Super Bowl. The
two couples were: Kurt and Kathy DiGiovanni and Michael Castro and Megan
Bailey, Castro's girlfriend. Karen said Castro contacted her on her cell phone several
times before she left Glenn's house. She didn't recognize the number that Castro had
call her from but later learned from Glenn that Castro had just changed his number (
she provided the following: (609) 382-1172 which was changed to (609) 742-5700).
Karen could not recall the exact times Castro contacted her but believed most of the
contact occurred before she left Glenn's house. She said the initial contact with
Castro were several voice conversations via cell phone. The first call she believes was
Castro asking questions about what he could bring to the house later that day. She
said a short time later, Castro called and asked a question about a T-shirt order that he
claimed to be working on (as part of Event Coordination, Cheer Tech prints T-shirts
for each event and has a t-shirt printing operation in the back room of the
Gymnastic/Martial Arts facility in Hammonton. Castro will often help Kurt
DiGiovanni with printing). Karen felt Castro's questions strange because she believed
he should have known the answers to his questions.  He also asked her questions
about her day and when she was leaving Glenn's house. Following those two calls,

6

THEODORE F.L. HOUSEL
Atlantic County Prosecutor
4997 Unami Blvd.
Mays Landing, New Jersey 08330
609 909-7800                                                        MCU 12-011

Castro texted her several times for (in her opinion) no real reason other than to find
out if she had left the house. Karen said she left Glenn's house sometime after 1pm
and John Kingsbury was the only one there when she left.

The following is a copy of Karen's cellular phone call detail with Castro on Sunday, February 5,
2012. I requested that she copy it from her Cellular carrier's website.

## VOICE CALLS

| | | | | | |
|---|---|---|---|---|---|
| 02/05 | 11:17 AM | INCOMING | 609-742-5700 | NW | 2 |
| 02/05 | 11:09 AM | INCOMING | 609-742-5700 | NW | 1 |

## TEXT MESSAGES

| | | | | | |
|---|---|---|---|---|---|
| 02/05 | 02:19 PM | 609-742-5700 | Text/IM Messaging | Sent | 1Msg |
| 02/05 | 02:19 PM | 609-742-5700 | Text/IM Messaging | Received | 1Msg |
| 02/05 | 12:28 PM | 609-742-5700 | Text/IM Messaging | Sent | 1Msg |
| 02/05 | 11:59 AM | 609-742-5700 | Text/IM Messaging | Received | 1Msg |
| 02/05 | 11:40 AM | 609-742-5700 | Text/IM Messaging | Received | 1Msg |
| 02/05 | 11:38 AM | 609-742-5700 | Text/IM Messaging | Sent | 1Msg |
| 02/05 | 11:38 AM | 609-742-5700 | Text/IM Messaging | Sent | 1Msg |
| 02/05 | 11:22 AM | 609-742-5700 | Text/IM Messaging | Received | 1Msg |

During the interview with Karen she recalled an incident that happened earlier in the
week. On Tuesday, January 31, 2012, at approximately 9 p.m. she and Glenn arrived
at his house in Mullica. Karen noticed that a piece of her luggage that was in the foyer
appeared to have been rummaged through.  She described the bag as a rectangle
shape suitcase that she takes to Cheer Tech competitions regularly.  The bag was in
the foyer near the front door, which is a routine location for her to leave the suitcase.
She noticed that the suitcase was not fully closed and items of clothing were on the

7

THEODORE F.L. HOUSEL
Atlantic County Prosecutor
4997 Unami Blvd.
Mays Landing, New Jersey 08330
609 909-7800                                                                    MCU 12-011

---

floor in front of the bag. At this point, she asked Glenn what he was looking for in
her bag. Glenn said he had not gone in her bag. Karen was adamant that someone had
rummaged through her suitcase. Karen told John Kingsbury about her suspicions that
someone had been in the house. John expresses concern to both Glenn and Karen due
to the fact that he was home alone all day. John had the locks fixed on the home the
following day. Police were never contacted.

d.      On January 31, 2012, at 7:08 p.m. Mullica Township Police receive a report of a
        suspicious motor vehicle parked on Moores Avenue just north of the Woodland
        Avenue intersection. The complainant indicated that the vehicle pulled up and shut
        off its headlights. The vehicle was described as a small car, blue in color. The
        vehicle was gone from the area when patrol arrived.

e.      On February 5, 2012, between 1:00 & 2:00 p.m. approximately, multiple residents in
        the area of the homicide scene observed a bright blue car parked on Moores Avenue
        just past the Woodland Avenue intersection (this time-frame is consistent with Karen
        Drew's statement regarding what time she left Glenn's house). A male was observed
        to exit the vehicle and begin to walk North on Woodland Avenue toward Nesco
        Road. This male captures a resident's attention due to the fact that he had never seen
        him in the area before. The male walked to the end of Woodland Avenue and
        stopped at the intersection of Route 542. The suspicious individual turned around and
        began to walk south on Woodland back toward Moores Avenue; as the male passed
        the resident, the resident acknowledges him and says, "Hello." The male then picked
        up his pace and started jogging. The resident last reports seeing this male close
        to Moores Avenue jogging north on Woodland Avenue toward Route 542. The
        resident described this male as: Possibly Asian, 5'8 to 5'9 200 lbs. Stocky, a
        rounded, pale and pock marked face with sparse facial hair. The man was wearing a
        sky/baby blue hoodie/pull over with matching sweat pants, dark colored baseball cap,
        and tear drop shaped sunglasses. The sunglass lenses were reflective and gold in
        color.

f.      A query of New Jersey Motor Vehicle records reveals that Michael Castro is a 31-
        year-old male of Asian descent, Five foot eight inches in height and weighing
        between one hundred eight-one and two hundred pounds. New Jersey Motor Vehicle
        records show Michael Castro's vehicle registered as plate # WHF75T as a 2010 KIA
        Forte 2 Door, BLUE in color. The description provided by residents is consistent
        with the ethnicity, height and weight estimations of Michael K. Castro. A search of
        the Kia website revealed that the factory Blue of Castro's vehicle is bright or metallic

THEODORE F.L. HOUSEL
Atlantic County Prosecutor
4997 Unami Blvd.
Mays Landing, New Jersey 08330
609 909-7800                                                                 MCU 12-011

in appearance. The vehicle described by residents on both January 31st and February 5th, 2012 is consistent with the vehicle registered to Michael K. Castro.

g.      On February 9, 2012, Det. O'Hara of the Mullica Township Police Department and I went to the Power Athletics Gymnastic/Martial Arts Facility in Hammonton to make contact with the employees. Michael Castro was there when we arrived and we spoke with him. I asked him if he had heard anything regarding what had happened to John Kingsbury. He said no. Castro was not asked any questions regarding his potential involvement in the case. Castro was not asked, but he gave a detailed account of his whereabouts for Feb. 5, 2012. He did verify that he recently changed his cellular number from AT&T Wireless (609) 382-1172 which was changed to (609) 742-5700 on 2-3-2012 via the AT&T website. Adding, that only the phone number was changed to a new one, within his same plan. Castro also pointed out his vehicle in the parking lot. Castro's vehicle a is bright blue or metallic KIA Forte 2 Door with NJ registration # WHF75T.

During the conversation with Castro, he explained his concerns regarding the murder and the potential negative affect it could have on his business. Adding, that he has had multiple conversations with his partner in the Martial Arts business, Lauren Kohl regarding their concerns about the murder. Castro provided Kohl's cellular phone number 856-297-2746, in the event we needed to speak with her. He said he had already explored other facilities to relocate his business. At 4:17 pm, Det. O'Hara of the Mullica Township Police Department and I concluded our conversation with Castro. I recorded the time in my notes.

h.      The information regarding Lauren Kohl at the point of the Castro interview was that she was a Martial Arts trainer who worked for Castro. While speaking with Castro on 2/9/12, he informed me that she was also his business partner. I have had contact with Karen Drew multiple times during this investigation, and she mentioned that Kohl was Castro's accountant and that she was also, a Sheriff's Officer in Camden County, NJ. Furthermore, she and Glenn have seen Kohl secure a handgun in a drew behind the front desk at Power Athletics Gym. Karen explained that since the homicide, Glenn has asked Castro about the back rent money and Castro said that Lauren was "straightening it all out" and would be giving Glenn a check shortly. On the 2/9/12 (the day we spoke with Castro) Karen sent Kohl several text messages to her cellular phone inquiring about the back rent. Karen finally got a response from Kohl on 2/9/12 sometime after 5pm. Kohl said via text, that she had dissolved her partnership with Castro and that she (Karen) needed to speak with him about the money owed. Karen sent me a screen-shot (photograph) of the text message from Kohl.

**THEODORE F.L. HOUSEL**
Atlantic County Prosecutor
4997 Unami Blvd.
Mays Landing, New Jersey 08330
609 909-7800                                                    MCU 12-011

---

On Monday, February 20, 2012, Karen Drew advised me that Michael Castro removed his computer and other business items from Power Athletics Gym. In a letter

Castro left at the Gym he stated that his bank accounts were empty and he didn't have money to pay the current rent or back rent.

i.    Through the investigation, it was verified that Lauren Kohl is an Officer with the Camden County Sheriff's Office, and is assigned to the courthouse in Camden. Kohl was also run for registered handguns (as was multiple individuals in this case). Kohl has 3 handguns legally registered handguns, a Taurus .40 caliber (SXD62376), a Kahr .40 caliber (DF1806) and a Ruger .380 (37201647). The guns were also run to see if they were entered as being stolen, as of 2/16/2012 none were reported as stolen. Kohl is identified as:

Lauren Kohl
DOB 02/20/1978
SS# 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
5 Oak Forest Drive
Sicklerville, NJ

j.    I contacted Sturm, Ruger Firearms and verified that a test fired spent shell casing was provided when Ruger .380 serial #37201647 was purchased.

k.    On February 15, 2012, I received Castro's cellular phone records from AT&T pursuant to a communication data warrant. Castro's cellular handset having the International Mobile Equipment Identity (IMEI) Number 012421000766000, which is assigned **AT&T** telephone facility number (609) 742-5700. Said **AT&T** telephone facility number is in the account name of Michael Castro. The records show that immediately following our interview with Castro, Lauren Kohl is the first call he made and they spoke for more than 9 minutes. In the hours following the interview, Castro sent Kohl 13 text messages and Kohl sent Castro 24 text messages via cellular phone until 11:39 pm. Castro's record were obtained from January 29, 2012 to February 15, 2012. Castro and Kohl had multiple communications via cellular phone well past February 9, 2012 when she claims to have dissolved her partnership with Castro.

Castro's cellular records contradict the detailed locations where he claims to have been on the day of the homicide, February 5, 2012. The records document each call (or communication) either dialed or received including test and data (internet) usage..

**THEODORE F.L. HOUSEL**
Atlantic County Prosecutor
4997 Unami Blvd.
Mays Landing, New Jersey 08330
609 909-7800                                                           MCU 12-011

The records also indicate the actual Longitude and Latitude of the cellular tower that routed each call. Furthermore, the records provide an azimuth (number of degree's from North) for each call, which indicates the direction in which Castro's phone would have been from the tower that routed the call. That data can be entered into the Goggle Earth's computer mapping program and an approximate per-call location can be ascertained. Castro's per-call cell site location places him geographacially within close proximity to the crime scene at minimum, within the time frame that multiple witnesses observe a vehicle consistent with Michael Castro's in the area of the homicide on the day it occurred.

l.     On 2/17/2012, I went to 466 S. White Horse Pike, Winslow Township, Camden County, NJ. I observed Michael Castro's KIA Forte 2 Door with NJ registration # WHF75T parked in the driveway of the residence. During my 2/9/2012 interview with Castro, he provided this address as his residence.

m.    On February 16, 2012, I called Lauren Kohl on her cellular phone (856-297-2746). Kohl did not answer, but I left a voice mail with my name and callback number. Kohl called me back on my cellular phone on this same date from (856-297-2746). I explained to Kohl what we were investigating and that we were speaking to persons associated with Glenn Kingsbury. I told Kohl that we could speak to her anytime and she didn't need to come to my office. Kohl did not respond with any available times to meet, adding that she was busy. I suggested she check her schedule and call me back as soon as she could. She said she would get back to me. I did make her aware that I knew she was a Police Officer. To this date, Kohl has not contacted me.

n.     On February 19, 2012, Lauren Kohl contacted the Winslow Township Police Department to report two guns missing, a Kahr .40 caliber (DF1806) and a Ruger .380 (37201647) from her residence. I learned of this report on February 21, 2012 and obtained the Winslow PD report. The following is a paraphrased summary of the report and my conversation with the reporting Officer.

On February 19, 2012, Ptlm. Haines responded to 5 oak Forest Drive, Sicklerville, NJ and spoke with Kohl. She told Haines that she last saw the guns at her house on December 24, 2011 and she thinks they were in her safe. On February 13, 2012 Kohl was scheduled for range qualification with the Sheriff's Office. On that day she could not find the above guns, but she couldn't remember where they were either. She said on February 15, 2012 she search her house for the guns and did not locate them. On February 16, 2012 (the day I spoke to her) she called out of work because she was

THEODORE F.L. HOUSEL
Atlantic County Prosecutor
4997 Unami Blvd.
Mays Landing, New Jersey 08330
609 909-7800                                                    MCU 12-011

upset about the guns being missing. 3 days later she informed the Sheriff's Office
Internal Affairs about the guns being missing who advises her to file a Police Report.

Kohl told the reporting Officer that nothing else, including two other guns, was
missing and that she has a dog that barks at anyone who walks by the house. During
my conversation with Officer Haines (Winslow Police) he was very suspicious of
Kohl because her story about the guns did not make any sense. During his initial
conversation with Kohl, she said that she did not observe any forced entry and did not
feel like there was a burglary at her residence.
    **SEE REPORT OF OFFICER HAINES (WINSLOW POLICE) WHICH IS
    INCORPORATED BY REFERENCE HEREIN AND ATTACHED HERETO.**

o.    Lt. Fetzer of the Camden County Sheriff's Office advised me that Officer Kohl is
      assigned to the Camden County Superior Court House. I asked Lt. Fetzer if there was
      any secured area within the Court House that only Officer Kohl had custody and
      control over. He explained that Officers that are assigned to the Court House are
      given lockers. There is a male officer and a female officer's locker room and Lt.
      Fetzer said he would identify Kohl's assigned locker during the execution of the
      Search Warrant. Lt. Fetzer explained that Kohl is not assigned a patrol vehicle and
      that Court House assigned Officers, drive their personal vehicles to the Court House.
      He advised me that he knows Kohl to operate a red Jeep Wrangler. A NJDMV check
      revealed a 2001 Jeep Wrangler, Red in color, bearing NJ registration SDX10Y with a
      vehicle identification number (VIN) of 1J4FA49S41P305233 registered to Lauren
      Kohl of 5 Oak Forest Drive, Sicklerville, NJ.

        Based on my training and experience and the information regarding the investigation
described herein. I have probable cause to believe, and do believe, that prior to February 5, 2012,
Michael Castro either with or without Lauren Kohl's knowledge, possessed Kohl's Ruger .380
(serial #37201647) semi-automatic handgun and used it to shoot and kill John Kingsbury at 2140
Woodland Avenue, Mullica Township, NJ on February 5, 2012. Based on Kohl's actions
following the homicide, specifically by ignoring my request on 2/16/12 to be interviewed and her
clear attempt on 2/19/12, to report the murder weapon stolen without any believable explanation
(3 days after the Homicide Unit from another County requests to speak with her). A check of
Kohl's Camden County Sheriff's Office firearms qualification records show that she regularly
qualifies with one or more off duty weapon. In my 15 years as a law enforcement officer, I know
that officers that qualify with off duty weapons carry an off duty weapon. In the Winslow PD
report regarding her stolen guns, Kohl claims not to have seen her off duty weapons since

12

THEODORE F.L. HOUSEL
Atlantic County Prosecutor
4997 Unami Blvd.
Mays Landing, New Jersey 08330
609 909-7800

MCU 12-011

December 24, 2011, this statement clearly flies in the face of reason. As a law enforcement officer, Kohl demonstrated reckless disregard in reference to her knowledge of the locations of her personal handguns. Also, Kohl's clear disregard of NJS 2C:58-19, which requires the legal

owner of a firearm to report the loss or theft of said firearm within 36 hours upon discovery. Not withstanding that Kohl is a sworn law enforcement officer and should have not had to be directed by her agency to report the guns stolen.

Furthermore, the fact that, Kohl is the first person Michael Castro contacts, following my interview with him on 2/9/2012 and the almost constant contact with Castro for the next 6 hours. On the same day, Kohl notifies Karen Drew that she and Castro have dissolved their partnership, which can clearly be interrupted that she was no longer in contact with him or at the least, there was problems between them.

The recovery of the Ruger .380 (serial #37201647) semi-automatic handgun and or the manufactures test fired spent shell casing provided when the weapon was purchased can be directly compared to the .380 casings recovered at 2140 Woodland Avenue, Mullica Township, NJ on February 5, 2012. Also, the recovery and examination of Lauren Kohl's and Michael Castro's cellular phones could reveal evidentiary communications before, during and after the murder of **John Kingsbury**.

Wherefore, I respectfully request that a Search Warrant be issued authorizing the search of the aforesaid properties as described above for evidence related to the murder of **John Kingsbury** and all associated charges surrounding this investigation.

THEREFORE, based on the information contained in this affidavit and on my training and experience, persons who commit homicide with firearms have already demonstrated their ability and willingness to kill. Furthermore, the weapon used in this homicide has not been recovered. Also the suspect's ability to retrieve any weapons easily accessible, thus endangering officers and persons inside the room. Any delay in entering or announcing that the police were present will enable the residence occupants to quickly retrieve weapons and have an unsafe advantage over law enforcement.

13

THEODORE F.L. HOUSEL
Atlantic County Prosecutor
4997 Unami Blvd.
Mays Landing, New Jersey 08330
609 909-7800                                          MCU 12-011

WHEREFORE, based on the information contained in this affidavit and based on the training and experience of this affiant, it is respectfully requested that a **NO KNOCK Search Warrant** be issued for 5 Oak Forest Drive, Sicklerville, Camden County, NJ. & 466 S. White Horse Pike, Winslow Township, Camden County, NJ.

_____          2-23-12
Detective Sergeant Michael Mattioli          date
Atlantic County Prosecutor's Office

_____          2/23/12
Chief Assistant Prosecutor                        date

Sworn and Subscribed before me this 23rd day of Feb, 2012

_____
Judge of the Superior Court
Atlantic County New Jersey

Bernard E. DeLury, Jr. J.S.C.

14