UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GLENN KINGSBURY, individually and in his capacity as Executor of the ESTATE OF JOHN KINGSBURY, deceased, | Civil No. 13-7912 (NLH/JS)  **MEMORANDUM OPINION & ORDER** |
| Plaintiff, | |
| v. | |
| CAMDEN COUNTY SHERIFFS DEPARTMENT, CAMDEN COUNTY, LAUREN KOHL, MICHAEL CASTRO, JOHN DOES 1-5 individually and/or in their official capacities, jointly, severally and in the alternative, | |
| Defendants. | |

**APPEARANCES**:

JUSTIN ROBERT WHITE
TESTA HECK SCROCCA & TESTA, PA
424 W. LANDIS AVENUE
VINELAND, NJ 08360
        On behalf of plaintiff

HOWARD LANE GOLDBERG
WILLIAM H. KENNEY
OFFICE OF CAMDEN COUNTY COUNSEL
520 MARKET STREET
COURTHOUSE - 14TH FLOOR
CAMDEN, NJ 08102-1375
     On behalf of Camden County defendants

ROBERT M. KAPLAN
MARGOLIS EDELSTEIN
100 CENTURY PLAZA
SUITE 200
MOUNT LAUREL, NJ 08054
     On behalf of Lauren Kohl

DOUGLAS L. CODY
CODY & CODY, ESQS.
653 WHITE HORSE PIKE
HAMMONTON, NJ 08037
      On behalf of Michael Castro

**HILLMAN, District Judge**

WHEREAS, pending before the Court is the motion of plaintiff to appeal the Magistrate Judge's determination that his tort claim notice served onto the County of Camden was untimely, and his tort claims against the County are barred[1]; and

The Magistrate Judge having issued a comprehensive Memorandum Opinion and Order, wherein he meticulously set forth all the facts alleged by plaintiff in his complaint, the parties' arguments concerning the timeliness of plaintiff's tort

---

[1] A United States magistrate judge may hear and determine any non-dispositive pretrial matter pending before the court pursuant to 28 U.S.C. § 636(b)(1)(A), and a district court judge will only reverse a magistrate judge's opinion on pretrial matters if it is "clearly erroneous or contrary to law," 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A).  Because the determination of the propriety of tort claim notices under the NJTCA is dispositive to a plaintiff's claims, and not simply a pretrial matter, see Wright v. State, 778 A.2d 443, 450 (N.J. 2001) (citation omitted) ("The New Jersey Tort Claims Act, N.J.S.A. 59:1-1, et seq., effective July 1, 1972, is dispositive, with respect to causes of action in tort accruing on and after that date, of the nature, extent and scope of state and local tort liability and the procedural requisites for prosecuting tort claims against governmental agencies."), this Court questions whether plaintiff's motion should have been set before the Magistrate Judge to decide.  To the extent that the motion should have been heard by this Court, this Memorandum Opinion and Order shall serve to be a decision on plaintiff's motion in the first instance rather than a reversal of the Magistrate Judge's decision.

2

claim notices, and the law governing tort claim notices under the New Jersey Tort Claims Act (NJTCA), N.J.S.A. 59:8-3, 8-8 (see Docket No. 23); and

This Court will therefore adopt the Magistrate Judge's Opinion in its entirety, except for the analysis beginning on page 11 with regard to the accrual date of plaintiff's cause of action against the County.  For reference, the Court will briefly restate the relevant allegations and law:

> The present action arises out of the death of plaintiff's father, John Kingsbury, who was shot and killed on February 5, 2012, during an apparent home invasion at plaintiff's residence in Mullica Township, New Jersey. Br. at 1. Plaintiff was the first person to discover his father's body and found two spent .380 caliber shell casings located nearby. Affidavit of Michael Mattioli at 4 [Doc. No. 11-1]. An autopsy confirmed that plaintiff's father died as a result of two gunshot wounds to the head. Id. On the night of the shooting, the Atlantic County Prosecutor's Office ("ACPO") opened a homicide investigation and interviewed plaintiff and his girlfriend, Karen Drew ("Drew"). Id. While discussing possible suspects, plaintiff informed the ACPO that he owned a cheerleading event coordinating business with Drew, which generated a large amount of cash that was often kept in his home. Id. at 5. Plaintiff explained that he had "dozens of employees [and] business associates (including [defendant] Michael Castro ("Castro")) that [were] aware of the volume of cash his business generates." Id. Plaintiff told the ACPO that he also owned and operated a gymnastics business out of a facility he rented with Castro, who operated a separate martial arts gym in the same facility. Id. Plaintiff stated that he knew Castro for less than a year at the time of the shooting, but noted that Castro occasionally worked for his company. Id.
>
> In her interviews with the ACPO, Drew voiced her suspicions of Castro's involvement in the death of plaintiff's father, noting that Castro owed plaintiff several months of back rent and "bounced" multiple checks

totaling approximately $8,000. Id. Drew's suspicions were largely predicated upon numerous calls and text messages she received from Castro questioning her about her plans to leave plaintiff's home on the day of the shooting. Id. 6-7. In Drew's opinion, "Castro texted her several times for . . . no real reason other than to find out if she had left the house." Id. at 7. In subsequent interviews with the ACPO, Drew mentioned that Kohl, an officer with the Camden County Sheriff's Department, served as the accountant for Castro's martial arts business. Drew claimed that she and plaintiff witnessed Kohl secure a handgun behind the front desk at plaintiff's gymnastics facility, but did not specify when this allegedly occurred. Id. at 9. Drew also explained that in the days following the shooting, plaintiff contacted Castro about the back rent he owed and was told that Kohl was "straightening it all out." Id. According to Drew, she sent multiple text messages to Kohl inquiring about the status of the back rent. Kohl eventually responded to Drew's messages on February 9, 2012, stating that her partnership with Castro had been dissolved and instructed Drew to contact Castro about the money owed. Id.

On February 19, 2012, Kohl contacted the Winslow Township Police Department to report that two of her weapons were missing from her home. When Kohl was questioned by the police about the whereabouts of her guns, she recalled last seeing the guns in her home on December 24, 2011. Although Kohl alleged that she first noticed the guns were missing on February 13, 2012, she did not file a police report until six days later.

After a year passed without any arrests, despite Castro emerging as a primary suspect, plaintiff decided to hire a private investigator to investigate his father's murder. Pl.'s Aff. at ¶¶ 6-7. Soon thereafter, on April 9, 2013, plaintiff claims he learned that Castro was arrested in Florida and charged with his father's homicide. Pl.'s Aff. at ¶ 8. According to plaintiff, it was not until Castro's pre-trial hearing on September 11, 2013, that he learned the handgun Castro allegedly used to kill his father "had been in the custody and/or control of . . . Lauren Kohl." Id. at ¶ 10.

On October 28, 2013, plaintiff forwarded a Notice of Claim directed to Kohl, Camden County, and the Camden County Sheriff's Department. See Br., Ex. A. Camden County responded by letter dated October 30, 2013, notifying

4

> plaintiff it would "not acknowledge receipt of [plaintiff's] claim since it was received by the County outside of the ninety (90) days permitted under the [NJTCA]." Br., Ex. C [Doc. No. 6-3]. . . . plaintiff filed the instant action on December 31, 2013, acting as executor of his father's estate.

(Docket No. 23 at 2-5)[2];

The NJTCA provides, "No action shall be brought against a public entity or public employee under this Act unless the claim upon which it is based shall have been presented in accordance with the procedures set forth in this chapter," N.J.S.A. 59:8-3, and a tort claim notice "must be served upon the public entity within 90 days of the accrual of the claim, and failure to do so will forever bar the claimant from recovering against a public entity or public employee," N.J.S.A. 59:8-8; and

The accrual date under the NJTCA is generally the date on which the alleged tort is committed, Beauchamp v. Amedio, 751 A.2d 1047, 1050 (N.J. 2000), but under N.J.S.A. 59:8-9, a court may allow the late filing of notice if the party makes its motion within one year of the claim accrual date provided: "(1) the claimant seeking to file a late claim shows reasons constituting 'extraordinary circumstances' for the claimant's failure to meet the 90-day filing requirement; and (2) that the

---

[2] The County and its Sheriff's Department are the same entity for liability purposes.  See Franks v. Cape May County, 2010 WL 3614193, *7 (D.N.J. 2010) (citing N.J.S.A. 40A:14-118 and cases).

5

defendant(s) are not 'substantially prejudiced thereby,'" id. (citing N.J.S.A. 59:8-9); and

The "discovery rule" has been applied in the NJTCA context:

> Under the "discovery rule," the statute of limitations does not begin to run until the injured party becomes aware, or should become aware, of the existence of his or her injury, or that the injury is due to the fault of a previously unidentifiable individual or entity. By its own terms, this exception applies only where the injured party has no reason to know of the existence of a claim. Indeed, the discovery rule "provides that in an appropriate case a cause of action will be held not to accrue until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim." Indeed, as the New Jersey Supreme Court has explained, "[o]nce a person knows or has reason to know this information, his or her claim has accrued since, at that point, he or she is actually or constructively aware 'of that state of facts which may equate in law with a cause of action.'"

Tripo v. Robert Wood Johnson Medical Center, 845 F. Supp. 2d 621, 628 (D.N.J. 2012) (internal citations omitted); and

Plaintiff in this case arguing that his tort claim notice was timely based on the discovery rule; but

The Magistrate Judge finding that plaintiff's cause of action accrued on February 5, 2012, the day that plaintiff's father was shot, and not on September 11, 2013, when plaintiff claims that he first discovered at Castro's pre-trial hearing that he had potential civil claims arising out of a link between Kohl's weapon and his father's murder; and

The Magistrate Judge explaining that plaintiff failed to exercise due diligence in ascertaining that the Camden County

6

Sheriff's Department may have been implicated in the circumstances of his father's murder by: (1) waiting a year to hire a private investigator; (2) not seeking public records regarding the gun, (3) not presenting evidence that he asked any prosecutor for information or records relating to Kohl's guns, (4) knowing or should have known that Kohl was an officer with the Camden County Sheriff's Department, and that Kohl had access to a handgun that Castro knew about, (5) being aware of Castro's financial problems, that his girlfriend was immediately suspicious of Castro, and that Castro sent his girlfriend suspicious calls and texts right before his father died, and (6) by knowing or should have known that Castro knew plaintiff kept large sums of cash in his home, (see Docket No. 23 at 13, 15); and

    The Magistrate Judge ultimately concluding, "Given all of this knowledge and readily available information, especially Castro's connection to and relationship with Kohl, and the fact that they had access to a gun, plaintiff had reason to know of Kohl's alleged involvement in his father's murder." (See Docket No. 23, at 15-16); and

    The Magistrate Judge supporting that decision by comparing plaintiff's case here with two state court cases that found that the plaintiffs' tort claim notices were untimely because they did not exercise due diligence in finding the identity of the

7

public entity responsible for a protruding sewer pipe and a pot hole in the road (see Docket No. 23 at 12, 13, citing McDade v. Siazon, 32 A.3d 1122, 1129 (N.J. 2011) and Murphy v. Cty. of Ocean, Civ. No. L-1143-11 (per curiam), 2012 WL 3021087 (N.J. Super. Ct. App. Div. July 3, 2012).); but

This Court finding that the unique circumstances of this case take the analysis of plaintiff's due diligence out of the normal realm of cases that assess the timeliness of NJTCA notices; and

The Court finding that plaintiff's tort claims against the County are not barred because plaintiff's actions satisfy the due diligence requirement of the discovery rule, and, therefore, the accrual date of his claims is September 11, 2013, for the following reasons:

(1) The Atlantic County Prosecutor's Office investigators took over a year before they arrested Castro for the murder of plaintiff's father. Setting the accrual date of plaintiff's tort claims as the date of John Kingsbury's murder would require the layman plaintiff to have identified a suspect, a murder weapon, and the owner of the murder weapon, and learn that the murder weapon's owner used it to qualify for her job as a sheriff's officer, all ultimately leading to the appropriate probable cause to arrest that suspect, all within 90 days, which is a third of the time it took the ACPO.

8

(2) Even if plaintiff could have been aware that Castro was under investigation, there is no evidence in the record at this time that the ACPO would have shared the details of its investigation with plaintiff, including any ballistic report that identified the Camden County Sheriff's Department's connection to the murder weapon.  That at some point in time he could have submitted a FOIA request that would have provided some information about the murder weapon does not suggest that the information would have been available and provided within the 90-day window.

(3) Even if plaintiff had suspected that Castro was involved, he knew of Castro's relationship with Kohl, and knew that Kohl had guns and worked for the Camden County Sheriff's Department, all plaintiff had during the 90 days after the murder were his speculations.  Although the NJTCA requires a claimant to provide notice of when injury occurs, rather than when the full extent of an injury is known or when contemplating the filing a lawsuit, Beauchamp, 751 A.2d at 1052-53, a tort claim notice must be based on more than speculation, see, e.g., Thomasian v. New Jersey Institute of Technology, 2009 WL 260791, 3 (D.N.J. 2009) (rejecting the plaintiff's tort claim notice because he "failed to allege facts beyond a speculative level that tend to establish that his tort claims accrued within 90 days").

9

(4) The purpose of the NJTCA is to provide a public entity with "prompt notification of a claim in order to adequately investigate the facts and prepare a defense," to inform the public entity "in advance as to the indebtedness or liability that it may be expected to meet," and "to allow the public entity at least six months for administrative review with the opportunity to settle meritorious claims prior to the bringing of suit." Beauchamp, 751 A.2d at 1052-53.  These considerations are important in the typical NJTCA cases that deal with injuries caused by defective conditions, such as pot holes in roads or exposed drain pipes, because over time those conditions may change, and without prompt notice of that defective condition and the resulting investigation into the claimed injury, the public entity may be prejudiced.  In this case, however, the CCPO was aware within days of the shooting that one of its sheriff's officer's off-duty guns was the murder weapon.  (See Docket No. 11-1 at 11-12, Search Warrant Affidavit of Michael Mattioli, ACPO.)  Moreover, it was aware that Kohl performed firearms qualifications with that off-duty weapon.  (Id.)  Plaintiff's tort claim notice served on the County a year and a half later did not tell the County anything that it did not already know.

(5)   Even if the Court did not apply the discovery rule to cause plaintiff's tort claim notice to be timely filed (i.e.,

10

plaintiff served his notice within 90 days of when he first discovered that Kohl's gun was the murder weapon), the extraordinary circumstances of this case cause the notice to be proper. For a late-filed tort claim notice to be valid because of the particular circumstances of the situation, the public entity must not be substantially prejudiced. "Substantial prejudice in this context means substantial prejudice in maintaining one's defense. Generally that implies the loss of witnesses, the loss of evidence, fading memories, and the like." Blank, 723 A.2d at 78. The burden is on the public entity to show substantial prejudice. Id. Here, other than ostensibly not wanting to be a defendant in a lawsuit, the County has not articulated how it would be substantially prejudiced by plaintiff's tort claim notice served on October 28, 2013 for the February 5, 2012 homicide.

(6) As one New Jersey court noted, "There is an obvious distinction between knowing that one has a cause of action against a public entity and not pursuing it properly and timely for personal reasons and, on the other hand, not timely knowing or being chargeable with timely knowledge that a public entity may be liable for an injury." Blank, 723 A.2d 78. Plaintiff in this case demonstrated diligence well beyond a typical tort claimant by hiring at his own expense a private investigator to investigate his father's murder because the ACPO had made no

11

arrests after a year-long investigation.  That step alone strongly suggests that if plaintiff had been aware of a tort claim against the CCPO before September 11, 2013, he would not have knowingly let that claim lapse.

    Accordingly,

    IT IS on this   29th   day of   June   , 2015

    ORDERED that plaintiff's motion to appeal the Magistrate Judge's decision on the timeliness of plaintiff's tort claim notice [24] is GRANTED to the extent that this Court finds that plaintiff's notice of tort claim served on the County of Camden was timely.


                                                             s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.